UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, ROYAL INSURANCE COMPANY OF AMERICA A/K/A ROYAL INSURANCE COMPANY, ROYAL INDEMNITY COMPANY, NORTHWEST TOWER CRANE SERVICES, INC., and JOHN DOES I-V,<br><br>Defendants. | CASE NO. C07-923 MJP<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came on regularly for trial on September 14, 15, and 16, 2010, before the Honorable Marsha Pechman, United States District Court Judge, sitting without a jury. Plaintiff American Guarantee and Liability Insurance Company was represented by Jacquelyn A. Beatty and Barbara J. Brady of Karr Tuttle Campbell. The defendant Westchester Surplus Lines

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 1

Insurance Company was represented by William A. Olson of Aiken, St. Louis & Siljeg, P.S., Seattle, Washington. The defendant Royal Insurance Company was represented by Russell Love and Lori Nelson Adams of Thorsrud Cane & Paulich, Seattle, Washington. The Court, having considered the evidence before it, including the testimony of witnesses and the documents and exhibits which were admitted by the Court, having heard argument and considered the briefs and memoranda of counsel, and having reviewed the facts and records of this action, makes the following findings and conclusions:

I.     **FINDINGS OF FACT**

### Background Facts and Procedural Context

1. This insurance dispute arises out of an accident that occurred on a large construction site in Bellevue, Washington, called the "Lincoln Square Project." On June 26, 2002, a Champion US2200 personnel hoist fell and injured three employees of Northwest Tower Crane Services, Inc. ("Northwest"), a subcontractor working at the Lincoln Square Project. The hoist incident occurred as Bellevue Master sought to "mothball" the Lincoln Square Project in the summer of 2002. After the accident, the injured employees sued Champion Elevators, Inc. (Champion), the owners of the hoist (referred to herein as "accident manlift") involved in the accident. Champion's insurer, Evanston Insurance Company ("Evanston"), filed a third-party claim against the general contractor of the project, Bellevue Master LLC. American Guarantee and Liability Insurance Company ("American Guarantee") insured Bellevue Master. American Guarantee and Evanston settled the injured employees' claims. American Guarantee and Evanston filed suit against Northwest and its insurers, Westchester Surplus Lines Insurance Company ("Westchester") and Royal Insurance Company of America ("Royal"), seeking

coverage under Northwest's insurance policies. Both Westchester and Royal refused to provide any coverage.

2. The Westchester policy grants additional insured status to third parties "as required by contract, provided the contract is executed prior to loss." (Dkt. No. 51 at 11.) Royal owes a duty to provide excess insurance if Westchester owes the primary insurance coverage. The Court previously found that Plaintiffs failed to show evidence of a contract that required Bellevue Master to be named as an additional insured, and granted summary judgment in favor of Defendants. (Dkt. No. 51.) On appeal, the Ninth Circuit reversed and remanded for additional discovery without reaching any of the merits of the Court's decision. (Dkt. No. 59.) The parties proceeded to trial on the issue of whether a contract existed between Northwest and Bellevue Master that added Bellevue Master as an additional insured for the dismantling of the Champion accident manlift.

**Persons and Entities of Interest**

3. The amount in controversy exceeds $75,000.

4. American Guarantee is a New York corporation having its principal place of business in Schaumburg, Illinois. It is doing and has done business in the State of Washington and King County.

5. Westchester is a surplus lines insurance company incorporated under the laws of Georgia, with its principal place of business in Georgia. Westchester is doing and has done business in the State of Washington.

6. Royal Insurance Company of America is an insurance company incorporated under the laws of the state of Illinois, with its principal place of business in North Carolina. Royal Insurance Company did business in the State of Washington.

7. Royal Indemnity Company is a Delaware corporation licensed to sell insurance in Washington State. Its principal place of business is in North Carolina. Royal Indemnity Company merged with Royal Insurance Company of America a/k/a Royal Insurance Company effective December 31, 2004. Royal Indemnity Company was the surviving corporation. Royal did business in the State of Washington.

8. Northwest is a Washington corporation doing business in King County, Washington.

9. David Weber is the President of Northwest.

10. Kevin Lavorgna was the Regional Sales Manager for Champion.

11. Bovis Lend Lease was a construction manager for Bellevue Master. Bovis employed Jerry Ozment as a project superintendant commencing in early 2002. Bellevue Master was the construction manager at the time of the accident involving the Champion manlift.

12. PCL Construction was a construction manager for Bellevue Master from December 2000 to May 21, 2001.

13. Albrecht Birkenbuel ("ABI") was a concrete contractor on the Lincoln Square Project. ABI employed Tony Mantle, who later became temporarily employed by Bellevue Master as its superintendent for this project. He served on the project from approximately April or May 2001 to June or July 2002. His main duties were to supervise the construction work related to the concrete structure including scheduling equipment installation and dismantling.

**Work Related to the Accident Manlift**

14. Bellevue Master hired Champion to supply, erect and dismantle the manlifts for the Project. The Equipment Rental Agreement dated March 9, 2002 provided that it would be

1  modified to include installation, jump and dismantle services.  It was modified by the Equipment
2  Rental Agreement dated April 29, 2009.

3       15.    Champion orally subcontracted the installation and dismantling work to
4  Northwest.  David Weber and Kevin Lavorgna orally agreed to the terms of work, including
5  pricing, scope of work and scheduling.  Insurance or indemnification was not discussed.

6       16.    Tony Mantle did not participate in the discussions between Lavorgna and Weber.
7  Mantle never discussed any insurance requirements with Weber or additional insured coverage at
8  any time during his period of involvement with the project.

9       17.    Northwest installed a dual hoist on April 17, 2002.  Northwest installed the
10 accident manlift on May 3, 2002 to May 7, 2002.

11       18.    On May 21, 2002, Lavorgna (of Champion) sent Weber a purchase order and
12 subcontract agreement.  The purchase order specified the erection, jump, dismantle and
13 permitting of the accident manlift.  The purchase order also stated that the terms were "Subject to
14 the return of the signed subcontract which is attached hereto and made a part of this Purchase
15 Order."  Weber did not sign or return the subcontract or purchase order.  There were no further
16 discussions about the subcontract until after the June 26, 2002 accident.

17       19.    On June 4, 2002, Ozment sent a fax to Weber requesting information as to the
18 cost of the dismantling and load out of two cranes and "the hoist on the hotel."  The hoist on the
19 hotel was not the accident manlift.  He made this request because Bellevue Master was making
20 plans to "mothball" the Project.  This was not a request to dismantle the accident manlift.

21       20.    On June 10, 2002, Weber responded to Ozment by fax sending him the cost
22 information previously provided on the two tower cranes, the dual hoist and the accident manlift.
23 Ozment did not know why Weber returned cost information for the accident manlift.  Ozment
24

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 5

1  did not ask for it and did not ask Weber to take down the accident manlift. Ozment and Weber

2  did not discuss insurance or any insurance requirements. Ozment did not respond to Weber's

3  fax.

4      21.    On June 14, 2002, Weber sent a fax to Lavorgna with the same information he

5  faxed to Ozment regarding the previously provided prices on the dismantle of the Champion

6  manlifts, including the accident manlift.

7      22.    When Bellevue Master was ready to dismantle equipment, Tony Mantle contacted

8  David Weber to schedule the dismantle of one of the tower cranes (the 390HC Tower Crane) and

9  the accident manlift. Tony Mantle also contacted Kevin Lavorgna at Champion and notified him

10 of the dismantling schedule. Weber notified Lavorgna of the dismantling schedule as well.

11     23.    Northwest dismantled the accident hoist on June 26, 2002 and June 27, 2002.

12 Bellevue Master paid Northwest directly for the work and sorted out this payment with

13 Champion in its final reconciliation and payment to Champion on the contract between

14 Champion and Bellevue Master. Throughout this time period from installation to dismantling,

15 there was no discussion of insurance with David Weber, Jerry Ozment or Tony Mantle.

16 **Northwest's Prior Work at the Lincoln Square Project**

17     24.    Prior to the accident involving the Champion manlift, Northwest performed work

18 directly for Bellevue Master erecting two tower cranes at Lincoln Square in December 2000 and

19 in January 2001. At this time, PCL Construction Services, Inc. was the general contractor.

20 Weber orally contracted with Cam Langevin at PCL for this work. There was no written

21 contract. Langevin was the District Purchasing and Equipment Manager for PCL. The oral

22 agreement did not relate to the accident manlift. Weber and Langevin did not discuss or contract

23 with reference to any insurance requirements for the tower crane work or any future work.

24

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 6

25. After Northwest installed the tower cranes, Sue Yancey, an office employee at Bellevue Master, sent a request to Northwest's office for a certificate of insurance. Her request went to Sherri York, a bookkeeper at Northwest. Ms. York forwarded the request to JBL&K Risk Services, Inc., in Portland, Oregon. JBL&K is Northwest's insurance broker. The request was received by Margaret Davis a clerk at JBL&K.

26. Ms. Davis issued a certificate dated February 22, 2001. The certificate identifies St. Paul Surplus Lines Ins. Co. as Northwest's liability insurer with limits of $1 million per occurrence. The certificate states that the certificate holders are included as additional insureds per job contract subject to policy terms, conditions and exclusions. It "is issued as a matter of information only and confers no rights upon the certificate holder. . . ." The certificate was re-issued on August 23, 2001 in connection with the renewal date of Northwest's insurance coverages.

27. There is no evidence that Ms. Yancey, Ms. York or Ms. Davis had any knowledge of the terms of the oral contract between Weber and Langevin.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391.

2. Plaintiffs' burden of proof is a preponderance of the evidence.

3. The Westchester and Royal policies provide additional-insured coverage only if Northwest agreed in a contract executed prior to loss to provide that Bellevue Master was to be named as an additional insured on the policies.

4. A contract is "executed" when there is an offer, acceptance, and bargained for consideration. In the context of large construction projects, "executed" requires a level of formality.

5. Northwest did not agree in a contract executed prior to loss to make Bellevue Master an additional insured.

6. Although Northwest provided work directly for Bellevue Master prior to the accident involving the Champion manlift in 2002, there was no executed contract executed prior to loss requiring Bellevue Master to be named as an additional insured on the Westchester or Royal policies.

7. Although Northwest responded to the scheduling request made by Tony Mantle to dismantle the accident manlift, there was no executed contract in place prior to loss requiring Bellevue Master to be named as an additional insured on the Westchester or Royal policies.

8. American Guarantee's claim is based on Bellevue Master's claimed status as an additional insured under the Westchester and Royal policies.

9. Bellevue Master does not qualify as an additional insured under the Westchester and Royal policies because no contract was executed by Northwest and Bellevue Master requiring Bellevue Master to be named as an additional insure on Northwest's Westchester or Royal policies.

10. Certificates of insurance are not the legal equivalent of a contract and are for informational purposes only.

11. The certificates of insurance Northwest obtained are not sufficient to show a contract was executed prior to loss that required Bellevue Master to be named as an additional insured on Northwest's policies with Westchester and Royal.

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 8

12. Because Bellevue Master does not qualify as an additional insured under the Westchester and Royal policies, American Guarantee's claim is dismissed with prejudice as to all Defendants.

13. Westchester and Royal are entitled to their costs.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 28th day of September, 2010.

Marsha J. Pechman
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 9